# AMERICAN STOVE COMPANY *v.* DETROIT STOVE WORKS.

# BARSTOW STOVE COMPANY *v.* DETROIT STOVE WORKS.

TRADEMARKS; REOPENING OF CASE; ABUSE OF DISCRETION.

1. To permit one manufacturer to use upon his gas and gasolene stoves a mark upon which another manufacturer has built up a trade in coal and wood stoves would lead to mistakes and confuse purchasers; accordingly the registration of the word "Jewel," as applied to gasolene stoves, will not be permitted where prior use by another company of the same word as applied to coal and wood stoves is shown.

2. The reopening of a case for the introduction of newly discovered evidence is always a matter for the trial court, and in its discretion. (Following *Richards* v. *Meissner*, 24 App. D. C. 309.)

3. There is no abuse of discretion on the part of the Commissioner of Patents in the overruling of a motion by a party to a trademark interference case, to reopen the case for the purpose of taking newly discovered evidence, where the motion was not made until after a finding adverse to such party had been made by the Examiner of Interferences, and the affidavits in support of the motion failed to show that the alleged newly discovered evidence could not have been discovered during the time fixed for taking testimony by the use of ordinary diligence.

4. The practice of counsel in patent cases in asking leading and suggestive questions, noted, and adversely commented upon, and the statement made that, where timely objection is made on the record, the court will be disposed to apply the rule against such question, and entirely disregard such testimony.

5. The testimony in a trademark interference case involving the right to register the word "Jewel," as applied to stoves, reviewed, and a decision of the Commissioner of Patents affirmed, where it appeared that the appellee company had used the mark since 1874, since which time the company had given it wide publicity, its sales of stoves

amounting to $2,000,000 a year, and that the word was known to the trade even better than the name of the company, while the claim of the appellant company that it had used the name on its stoves prior to that time was supported by two witnesses whose testimony was given in response to leading and improper questions, and failed to show with precision how many stoves were manufactured and when they were placed on the market, and where the books of the appellant were not produced; and where it also appeared that the appellant, prior to the controversy, disclaimed in the Patent Office the word "Jewel," its president stating under oath that the words "Bay State" were and had been the trademark of the company since 1848.

Nos. 479 and 480. Patent Appeals. Submitted March 19, 1908. Decided May 5, 1908.

HEARING on an appeal in two interference proceedings from a decision of the Commissioner of Patents.     *Affirmed.*

The facts are stated in the opinion.

*Messrs. Munday, Evarts, Adcock, & Clarke,* and *Mr. Henry Love Clarke* for the American Stove Company.

*Mr. H. N. Low* for the Barstow Stove Company.

*Mr. Samuel R. Betts* and *Mr. Edward W. Vaill, Jr.,* for the Detroit Stove Works.

Mr. Justice ROBB delivered the opinion of the Court:

These are interference proceedings involving the right to the use of the word "Jewel" as a trademark for stoves. As originally declared, only the American Stove Company and the Detroit Stove Works were involved. Upon the taking of testimony by the former company, evidence was adduced tending to show that the Barstow Stove Company and the Union Stove Works had used the mark prior to its use by either of the two parties to the interference. Thereupon the Barstow Stove Company filed an application for registration of the mark, and was made a party to the interference. The relation between

the American Stove Company and the Barstow Stove Company is friendly, as evidenced by the fact that they were represented by the same counsel before the Patent Office.

We will first consider the relative merits of the claims to priority of the American Stove Company and of the Detroit Stove Works. The Examiner of Interferences, whose opinion was sustained by the Commissioner of Patents, found that the Detroit Stove Works, in 1874, adopted and used the words "Crown Jewel" and the word "Jewel" alone as a trademark on coal and wood stoves; that the company has continuously and very extensively used the word "Jewel" as a trademark since that time; and that it began the manufacture of vapor stoves in 1883 and later gasolene stoves, and used the same trademark for these productions. We have carefully examined the record, and believe it fully sustains said findings. It also appears that in 1878, and again in 1897, the company registered the word "Jewel" as a trademark for stoves. While the 1878 registration was under a law that was subsequently declared unconstitutional, it nevertheless clearly establishes the contention of the company that for more than thirty years it has claimed this word as a trademark.

The earliest date claimed by the American Stove Company is 1881. It appears that the predecessors of this company at that time adopted the word as a trademark for its gasolene or vapor stoves, notwithstanding their knowledge of its prior adoption and extensive use by the Detroit Stove Works on coal and wood stoves. The American Stove Company now seeks registration of the word for vapor or gasolene stoves on the ground that there is such a fundamental difference between such stoves and the stoves originally manufactured by the Detroit Stove Works as to entitle the American Stove Company to the right of registration. In view of the fact that this company's predecessors adopted this word when they knew that the Detroit Stove Works had given it a trade value in the manufacture and sale of stoves, we are not disposed to indulge in fine distinctions for the purpose of permitting this company to hold what its predecessors thus unjustly appropriated. Gaso-

lene or vapor stoves are used for the same purpose as coal and wood stoves and belong to the same *genus*. The structural differences existing between them are largely due to the character of the fuel used. We agree with the Commissioner that "to permit one manufacturer to use upon his gas and gasolene stoves the mark upon which another manufacturer has built up a trade in coal and wood stoves would inevitably lead to mistakes and confuse purchasers."

As between the Detroit Stove Works and the American Stove Company, the former must prevail.

This brings us to the consideration of the case between the Detroit Stove Works and the Barstow Stove Company. When the Barstow Stove Company was admitted as a third party to the interference, and given opportunity to present proof, the company permitted that opportunity to pass without taking any testimony, and informed counsel for the Detroit Stove Works that it would take no testimony, but would rely upon the depositions of Lothrop H. Lewis and Albert N. Taylor as taken by the American Stove Company. Upon a finding, more than a year later, by the Examiner of Interferences, adverse to the Barstow Stove Company, the company filed a motion to reopen the case for the purpose of taking newly discovered testimony. This motion, after careful consideration, was denied by the Examiner of Interferences, and later, on appeal, by the Commissioner. This motion was based upon certain affidavits, including the affidavit of J. P. Barstow, president of the company. These affidavits contain nothing warranting the conclusion that the testimony sought to be introduced could not have been discovered during the time fixed for the taking of testimony, by the use of ordinary diligence. They contain no showing that any effort whatever was originally made to discover additional evidence. "The reopening of a cause for the introduction of newly discovered evidence is always a matter for the trial court and its in discretion." *Richard* v. *Meissner*, 24 App. D. C. 309. There has been no abuse of discretion on the part of the Commissioner in denying the above motion.

This brings us to a discussion of the merits of the case.

The senior party, the Detroit Stove Works, as previously stated, adopted this mark in 1874, and since that time has given it wide publicity,—the evidence showing that the yearly sales of the company of "Jewel" stoves now exceed $2,000,000, and that the word is known to the trade even better than the firm name.

The Barstow Stove Company relies upon the testimony of the witnesses Lewis and Taylor and certain inconsequential rebuttal testimony. The witness Lewis testified that he had worked for the Barstow Stove Company since, 1865, and that up to 1876 he worked on patterns and after that time as a foreman. The witness stated that the company had manufactured parlor stoves under the name of "Jewel" since he had entered its employ, and for about five years had been manufacturing ranges under that name. The witness was shown an 1868 catalogue of the company, and found thereon a representation of a "Jewel" parlor stove. He also produced an iron pattern from which castings for the stove were made, and into which was cast "Patent Jewel April 15, 1862." The witness at first testified without reservation that this casting was made in 1862, but later admitted that the notation "means just what it says on there, the patent and the date." He also testified that several thousand "Jewel" stoves had been made by the company. Taylor testified that he had been employed by the Barstow Stove Company since 1864 as a moulder, and that the company had been manufacturing "Jewel" stoves since that time. The witness stated from recollection that the company had also manufactured stoves designated as "The Harp," "Old Wood," "Bay State," "Model Cook," "Union Cook," "Barstow Cook," "Pattern Cook," "May Flower," "Lilydale," and "Parlor Franklin." He was asked about how many castings a week were then being made for stoves having "Jewel" on them, and replied: "More or less, according to the way they order. It's an old stove and has seen its best days."

The weight of some of the most material testimony of these two witnesses is greatly lessened because the testimony was given in response to leading and improper questions, and, if

the disposal of the case depended upon this testimony, we would feel constrained to sustain the objections noted at the time, and disregard it.   Instead of being asked what words, if any, were used by the company in connection with the manufacture of its stoves, and the nature and extent of such use, the witnesses were asked "whether or not the word *'jewel'* was ever used as a *trademark* in the stove-manufacturing business of the Barstow Stove Company?"   Throughout the examination of these witnesses leading and suggestive questions were asked. We have observed a tendency on the part of patent attorneys to disregard the rules of evidence by asking questions grossly leading and suggestive; and it may not be amiss to state that, where timely objection is noted in the record, this court will be disposed to apply the rule and entirely disregard such testimony.   The witness, instead of giving his independent recollection of past events, becomes by this practice a mere echo whose recollection stimulated by leading questions keeps pace with those questions.   The practice is objectionable and subversive of justice, and should be stopped.

In June, 1905, the Barstow Stove Company, through its president, filed an application for the registration of the words "Bay State" as its trademark.   Among the specimens of the mark filed with the application was one containing the words "Jewel Bay State."   The Examiner, in a written communication, directed the attention of the company to this fact, and suggested that the description and drawing should be revised accordingly.   In reply to this suggestion, the attorney for the company, whose office was located in the same city as the home office of the company, withdrew the specimen, and stated "that the words 'Bay State' have been used alone as a trademark."   The company also asked leave to amend the application so that it might show that the mark had been continuously used since the year 1848.   Leave was granted, and the application was amended accordingly.   The application, as amended, was sworn to by Mr. Barstow, the president of the company, and is in part as follows:

"The trademark consists of the two words 'Bay State.'   The

trademark has been continuously used in the business of said corporation since January 1st, 1848. The class of merchandise to which the trademark is appropriated is stoves and furnaces, and the particular description of the goods comprised in said class upon which said trademark is used is, stoves, ranges, gas stoves, gas ranges, hot-air furnaces, and low-pressure steam and hot-water boilers for heating purposes."

The witness Lewis was asked how long the words "Bay State" had been used in connection with stoves and ranges. He replied: "Probably twenty years," notwithstanding the sworn statement of the president of the company that it had been *the* mark of the company since 1848.

It is not stated by either Lewis or Taylor whether 1 or 100 stoves were manufactured prior to 1874, the date when the Detroit Stove Works adopted this mark; neither do they state when these stoves were first placed upon the market. It is inconceivable, in view of the fact that so much time had elapsed, and that so many different kinds of stoves had been manufactured by the company, that they should have been able to state with any degree of certainty the real date when the company commenced to manufacture and sell these stoves. If their testimony with any degree of precision fixed the date when a substantial number of these stoves was manufactured, we would not hesitate to assume the sale of those stoves. In view, however of the unsatisfactory nature of the testimony of these two witnesses, the fact that the books of the company were at its disposal when opportunity was given it to take testimony, that these books must have disclosed beyond peradventure whether or not these stoves were manufactured prior to 1874, and whether or not they were sold prior to that date; and, in view of the further fact that, prior to this controversy, we find the company disclaiming the word "Jewel," and the president of the company stating under oath that the words "Bay State" were and had been since 1848 the trademark of the company,—we agree with the Patent Office that it would be inequitable, and unjust, and against the weight of the evidence to deprive the Detroit Stove Works of the benefit of a trade-

name which it has taken years and effort to establish.   We are impressed with the belief that, but for the American Stove Company, the Barstow Stove Company would not have become a party to these proceedings, since, as one of its own witnesses stated, the stove in connection with which it has used this mark "has seen its best days."

We have carefully examined the testimony as to the prior use by the Union Stove Works of this mark, and agree with the Commissioner that the record is insufficient to constitute a bar to the registration of the mark by the Detroit Stove Works.

The decision of the Commissioner of Patents in both cases was right, and is affirmed.   The clerk of the court will certify this opinion and the proceedings in this court to the Commissioner of Patents, according to law.                    *Affirmed.*