45 C.C.P.A. (Patents).

**AMERICAN THROWING COMPANY, Inc., Appellant,**

v.

**FAMOUS BATHROBE COMPANY, Inc., Appellee.**

**Patent Appeal No. 6313.**

United States Court of Customs and Patent Appeals.

Dec. 13, 1957.

378

Howard A. Rosenberg, New York City, for appellant.

William R. Liberman, New York City, for appellee.

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY, RICH and JACKSON (retired), Judges.

JOHNSON, Chief Judge.

This is an appeal in an opposition proceeding under section 13 of the Lanham Trade-Mark Act, 60 Stat. 433 (1946), 15 U.S.C.A. § 1063 (1952), from the decision of the Commissioner of Patents, 109 U.S.P.Q. 366, speaking through the Assistant Commissioner, reversing the decision of the Examiner of Interferences which dismissed the opposition and which held that applicant (appellant here) was entitled to the registration sought. The Assistant Commissioner was of the opinion that appellant's mark was confusingly similar to appellee's registered marks and she accordingly sustained the opposition.

Appellee is a manufacturer of infants' and young children's wear, such as layette items, gowns, kimonos, buntings, robes and bibs. The registrations on which it relies in its notice of opposition are for "Slumber-Kins,"[1] alleged on the registration certificate to be used on "Children's Playsuits and Pajamas," and "Wiper-Kins,"[2] used on children's bibs. The filing date of the application for registration of each of these marks is De-

1. Reg. No. 565,356, issued October 14, 1952.

2. Reg. No. 568,570, issued December 30, 1952.

cember 15, 1951. The record indicates that the items identified by the mark "Slumber-Kins" consist of a terry cloth shirt, pants and bootees, which are suitable for playing, sleeping and napping.

Appellant is a manufacturer of infants' and children's knitted underwear. "Knit-Kins," which is the mark sought to be registered, is shown by the record to be used in conjunction with those items. The record establishes that the mark was first used on March 3, 1952, a date subsequent to appellee's filing dates.

The word "Wiper" has been disclaimed by appellee apart from the mark "Wiper-Kins." The Examiner of Interferences, in his decision, indicated also that appellant has disclaimed the word "Knit" apart from the mark "Knit-Kins."

Much of the testimony taken below and a good portion of appellant's arguments on appeal, is directed to the matter of appellee's sales and advertising in connection with "Slumber-Kins" and "Wiper-Kins." Appellant argues that all of the testimony of Murray M. Stern, Vice-President and Sales Manager of appellee, was vague and based on guesswork or approximation and, inasmuch as it was not based on the books and records of the business,[3] which would be the "best evidence" of these facts, his motion to strike [4] all the evidence of this witness as to appellee's costs of advertising and sales should have been granted. Apparently, appellant is of the opinion that if this testimony is stricken, appellee will be without *any* evidence tending to show *actual* damage by virtue of appellant's use of "Knit-Kins" and will accordingly lose its cause.

 The fallacy in appellant's argument is evident on its face. Whether or not its motion to strike was properly or improperly denied, appellant could not show any prejudice resulting therefrom. For even if appellee had introduced no testimony *at all* as to the number and amount of sales of products under its two marks, as well as to any advertising in relation to them, appellant would be in no better position. It is well settled that, in an opposition proceeding, the opposer need not show actual damage, Asbestone Co. v. Philip Carey Mfg. Co., 1914, 41 App.D.C. 507, but only likelihood of damage, Wilson v. Delaunay, 245 F.2d 877, 44 C.C.P.A., Patents, 1019; Armour & Co. v. Organon, Inc., 245 F.2d 495, 44 C.C.P.A., Patents, 1010. One of the more common methods of showing likelihood of damage is to show confusing similarity between opposer's mark and the mark sought to be registered, both as applied to the merchandise with which the marks are used. Pep Boys, Manny, Moe, & Jack v. The Fisher Bros. Co., 94 F.2d 204, 25 C.C.P.A., Patents, 818; Ely & Walker Dry Goods Co. v. Sears, Roebuck & Co., 90 F.2d 257, 24 C.C.P.A., Patents, 1244. The question of confusing similarity as to the marks here involved will be discussed infra.

 American Stove Co. v. Detroit Stove Works, 1908, 31 App.D.C. 304 and H. C. Cole & Co. v. William Lea & Sons Co., 1910, 35 App.D.C. 355, cited by appellant in support of its motion to strike, do not conflict with our reasoning. The former case involved an interference proceeding. In considering the question as to whether one of the parties had sufficiently proved its date of first use, the court noted that the evidence of that party was weak and uncertain and that there was better evidence available which was not introduced. The court accordingly refused to find the date of first use as alleged by that party. In that case, however, the party was an *applicant* for registration and therefore was forced to prove, by competent evidence, its date

---

3. Except for documentary exhibits relating to certain advertisements from newspapers and periodicals, the record utterly lacks documentary evidence as to sales and advertising related to "Slumber-Kins" and "Wiper-Kins."

4. This motion was made before the examiner and urged on appeal to the Commissioner.

of first use. No such situation exists in the case at bar, for appellee is here relying on its *registrations*, which constitute *prima facie* evidence of ownership, Lanham Trade-Mark Act, § 7(b), 60 Stat. 430 (1946), 15 U.S.C.A. § 1057 (1952), which ownership is *prima facie* evidence of use, Rosengart v. Ostrex Co., 136 F.2d 249, 30 C.C.P.A., Patents, 1046, and use will be implied by virtue of such registration even where there is no evidence of record relative to such use, Bielzoff Products Co. v. White Horse Distillers, 107 F.2d 583, 27 C.C.P.A., Patents, 722. The presumption of use created by the registration is deemed to relate back to the filing date thereof. Rolley, Inc. v. Younghusband, 9 Cir., 1953, 204 F.2d 209.

The H. C. Cole & Co. case, supra, merely cites the American Stove case, supra, with approval and adds nothing thereto material to the instant question.

■■ For the foregoing reasons, appellant's additional argument that appellee must show that it had prior use of its marks is without merit. As aforestated, appellant's earliest alleged use is subsequent to the filing date of each of appellee's applications for registration.

Appellant's argument that our holding would shift the burden of proof to it, whereas such burden is rightfully appellee's, as opposer, is also unavailing. True, the opposer, as the moving party, has the burden of proof. Where, as here, however, appellee has, by its registrations, established a *prima facie* case, the burden of *proceeding* shifts to appellant and it becomes incumbent upon it to refute appellee's *prima facie* case if it is to be successful in this proceeding.

In the view we take of this case, it will not be necessary to consider appellant's argument to the effect that appellee's registration for "Slumber-Kins" was obtained on a false affdavit and therefore cannot be relied upon for any purpose in this opposition proceeding. For we are of the opinion, as will presently be shown, that appellant's "Knit-Kins" is confusingly similar to appellee's "Wiper-Kins" as applied to the respective goods in question.

On the question of confusing similarity we agree with the Assistant Commissioner at the outset that

" * * * bibs * * * and underwear for infants and small children are all items which a single manufacturer might reasonably be expected to make."

Appellant, however, urges that:

"The word Kins is the English version of the German word kinder, or children. This version is well-known and has been in use for generations, to show the application of a word to something little, or a child. The singular in German is 'kind', with the 'd' silent, and is pronounced like the English word kin. The simple transition, in English, from 'kind' to the plural 'kins' is obvious. Actually, the common English 'kin' is directly derived from the German 'kind'.

"The term 'kins' is defined in Webster's New International Dictionary (1948), page 1363, as:

" '-Kin. Also -Kins. A diminutive suffix, as in manikin, lambkin, sonnikins.'

"The same dictionary, page 1496, defines the noun 'manikin' as '1. A little man; a dwarf; a pigmy', and the adjective 'manikin' as 'diminutive; dwarf; puny'; 'lambkin' is defined, page 1386, as '2. A young or tender person; chiefly in endearment'.

"The only common feature in the marks here at issue is the suffix '-Kins'. It is urged that this word Kins has a well understood significance as suggesting a small child, so that Opposer cannot pre-empt the field as to this word, when used in conjunction with the goods of the parties.

" 'Kins' can have no real distinctiveness when applied to infants'

and children's underwear, playsuits and pajamas.

"Under such circumstances, the law is that the entire marks must be considered as determinative of the question of confusion. A comparison of the marks in their entireties shows no similarity whatsoever.

"Each mark has its own, specific and easily understood meaning: Slumber-Kins, a sleeping garment for children; Wiper-Kins, a bib or face wiper for children; and Knit-Kins, knitted wear for children."

■ We are inclined to disagree with appellant. The relationship of the suffix "Kins" to the German words kind or kinder is remote at best. Indeed, the suffix would appear to be equally if not more suggestive of the well-understood definition of "Kin" as indicating one's relatives or a family relationship in general. Furthermore, the literal application of that portion of the Webster definition relied upon by appellant to the marks at bar, would result in, at best, (as the Assistant Commissioner points out) "little wipers" or "little knits," a designation not intended to be conveyed by these marks. We do agree, however, that one *might* conclude, based upon the Webster definition, supra, that there is a degree of suggestibility connected to the suffix "Kins"; that the marks *might* be construed to be *somewhat* suggestive of wipers (bibs) and knitted garments for infants. We feel, though, that the marks are not nearly so suggestive as appellant asserts them to be. It is clear then, that appellant's argument that the suffix "Kins" can have no real distinctiveness as applied to the merchandise in question is not well founded, for *suggestive* marks (as distinguished from descriptive marks) do have trade-mark significance. Van Camp Sea Food Co. v. A. B. Stewart Organizations, 50 F.2d 976, 18 C.C.P.A., Patents, 1415, 1420.

As aforesaid, the prefixes "Knit" and "Wiper" of appellant's and appellee's marks, respectively, have been disclaimed apart from the respective marks as a whole. The situation resolves itself, therefore, to a competition between two composite marks, one containing a prefix disclaimed as descriptive and a suffix which is remotely suggestive, the other containing a prefix different from the prefix in the first mark, but equally descriptive (and disclaimed), and a suffix identical to that of the first mark.

In American Brewing Co. v. Delatour Beverage Corp., 100 F.2d 253, 255, 26 C.C.P.A., Patents, 778, it was said by this court that:

"* * * we are of the opinion that disclaimed descriptive words in a mark should not be given the same prominence as that portion of the mark which possesses all of the qualities of a valid technical trademark. It is true that the general rule is that marks should be regarded in their entirety, including disclaimed words, but we do not think it could well be argued that disclaimed descriptive words could ever constitute the dominant part of a mark

\* \* \* \* \* \*

"Inasmuch as the disclaimed words are clearly not registrable, apart from the mark shown, any one has the right to use those words in a descriptive way, if descriptive of his merchandise. It therefore seems to us that the disclaimed words, although they are a part of the mark, could only in a very minor degree indicate origin of goods in the registrant."

■ It is clear from the foregoing that the prefixes "Wiper" and "Knit" are relegated to a position of minor importance as to the question of confusing similarity. Though the suffix "Kins" is not as strong an indication of origin as a *completely* arbitrary or coined word might be, it nonetheless is the

dominant part of each of the two marks. We are of the opinion that, considering the marks as a whole in light of the foregoing, the average purchaser of infants' wear would likely be confused as to the origin of appellant's "Knit-Kins."

As stated by the late Judge Hatfield in a concurring opinion in Bon Ami Co. v. McKesson & Robbins, Inc., 93 F.2d 915, 916, 25 C.C.P.A., Patents, 826:

"If all that a newcomer in the field need do in order to avoid the charge of confusing similarity is to select a word descriptive of his goods and combine it with a word which is the dominant feature of a registered trade-mark so that the borrowed word becomes the dominant feature of his mark, the registered trade-mark, made valuable and outstanding by extensive advertising and use, soon becomes of little value, and, of course, each of the subsequent imitating trade-marks (and there would be many) is of value only to the extent that its users are trading on the good will of the owner of the original registered trade-mark."

■ Were there any doubt in our minds we would, of course, resolve it against appellant, the newcomer in the field. The Bon Ami Co. case, supra.

Of the cases cited by appellant on this question, only two need be briefly mentioned. The first, Lauritzen & Co. v. Borden Co., 239 F.2d 405, 44 C.C.P.A., Patents 720, involved an opposition between the owner of a registration for "Protolac" and an applicant for "Fortilac," both applied to milk products. This court, stating that the suffix "lac" should be given little weight inasmuch as it "has a somewhat descriptive connotation as applied to milk products," held the marks not confusingly similar. In the instant case, however, the suffix common to each of the marks is the *dominant* portion of each mark. The Lauritzen case, supra, is, therefore, distinguishable.

In the second case, Smith v. Tobacco By-Products & Chemical Corp., 243 F.2d 188, 44 C.C.P.A., Patents, 880, an opposition was dismissed against the mark "Green Leaf" on the grounds that it was not confusingly similar to "Black Leaf," both applied to plant and garden sprays. Here again, "Leaf" was held highly suggestive of the use to which the products were to be put and thus entitled to little trade-mark significance. This case is obviously in the same category as the Lauritzen case, supra, and is distinguishable for the same reasons.

In the view we have taken, it is not necessary to consider appellee's second mark, "Slumber-Kins."

For the foregoing reasons, the decision of the Assistant Commissioner is affirmed.

Affirmed.

WORLEY and RICH, JJ., concur in the result.

JACKSON, J., retired, recalled to participate.