THE NAUTILUS GROUP, INC. f/k/a
Direct Focus, Inc., a Washington
corporation, Plaintiff,

v.

ICON HEALTH AND FITNESS, INC.,
a Delaware corporation,
Defendant.

Icon Health and Fitness, Inc.,
a Delaware corporation,
Counterclaimant,

v.

The Nautilus Group, Inc., a Wash-
ington corporation, Counter-
claim Defendant.

No. C02-2420P.

United States District Court,
W.D. Washington,
at Seattle.

July 14, 2003.

Order Denying Reconsideration
July 30, 2003.

See also 2003 WL 23330841.

## ORDER GRANTING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

PECHMAN, District Judge.

Plaintiff, manufacturer and patent-holder of the BowFlex exercise machine, moves for a preliminary injunction barring Defendant, the manufacturer of the Cross-Bow, from using the trademark "Cross-Bow" on exercise equipment. (Dkt. No. 63.) Because Plaintiff has shown a probability of success on the merits and the possibility of irreparable injury, Plaintiff's motion is GRANTED.

## BACKGROUND

Plaintiff The Nautilus Group, Inc. ("Nautilus") manufactures the BowFlex exercise machine, which incorporates resilient rods to create a resistance training system. There is no dispute that Nautilus has a federal registered trademark for "BowFlex," which was first registered in 1986.[1] The BowFlex mark was first used in commerce in 1984 and has been in continuous use ever since. BowFlex has invested a significant amount of money in promoting its product and mark, spending over $220 million in advertising through infomercials, emails, the internet, mailings, and print ads. BowFlex's advertising spending for 2002 alone was over $70 million. Plaintiff has sold over 780,000 BowFlex machines, with revenue from these sales exceeding $900 million. Plaintiff, through direct sales, has been virtually the exclusive source of BowFlex exercise machines.

Defendant ICON Health and Fitness ("ICON") recently introduced the Cross-Bow exercise device, which also uses resil-

Gary Jan Strauss, Garvey Schubert Barer, Seattle, WA, Keith Dubanevich, Garvey Schubert Barer, Portland, OR, Mark S. Carlson, Paul T. Meiklejohn, Dorsey & Whitney LLP, Seattle, WA, for Plaintiff/Counter Defendant.

Brent P. Lorimer, L. Rex Sears, Larry R. Laycock, Robyn L. Phillips, Sterling A. Brennan, Thomas R. Vuksinick, Workman Nydegger & Seeley, Salt Lake City, UT, J. Lawrence Wright, Halverson & Applegate, Yakima, WA, Stephen J. Kennedy, Stephen T Parkinson, Groff Murphy Trachtenberg & Everard, PLLC, Seattle, WA, for Defendant/Counter Claimant.

1. The actual trademark is for BOW–FLEX, although since BowFlex has trademarked variations without the hyphen. The company in itself interchanges Bowflex, BowFlex, BOW–FLEX, and BOWFLEX. (Connerty Decl. Ex. A at 1.) As it did in its first order in this matter, the Court will refer to the device and trademark as "BowFlex."

ient rod technology. CrossBow, which entered the exercise market in October 2002, has spent about $13 million in advertising. CrossBow also advertises through television infomercials, emails, and the internet.

## ANALYSIS

■ A plaintiff is entitled to a preliminary injunction in a trademark case when it demonstrates either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in his favor. *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1204–5 (9th Cir.2000). Courts have more briefly summarized the test in the trademark context: to prevail at the preliminary injunction phase, Plaintiff "must establish that it is likely to be able to show . . . a likelihood of confusion." *Id.* at 1205. Once confusion is demonstrated, irreparable injury is presumed. *Id.*

## A. LIKELIHOOD OF CONFUSION

■ To evaluate the likelihood of confusion, the so-called *Sleekcraft* factors provide guidance. *Interstellar Starship Servs. v. Epix. Inc.*, 304 F.3d 936, 942 (9th Cir.2002) (citing *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 346 (9th Cir.1979)). Those factors are: (1) the similarity of the marks; (2) the relatedness or proximity of the two companies' products or services; (3) the strength of the registered mark; (4) the marketing channels used; (5) the degree of care likely to be exercised by the purchaser in selecting goods; (6) the accused infringers' intent in selecting its mark; (7) evidence of actual confusion; and (8) the likelihood of expansion in product lines. *Interstellar Starship* at 942. This eight factor test is pliant, and the relative import of each factor is case specific. *Id.*

### 1. Similarity of the marks

The similarity of the marks is always an important factor in deciding trademark infringement. *Brookfield Communs. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1054 (9th Cir.1999). Where the two marks are entirely dissimilar, there is no likelihood of confusion. The more similar the marks in terms of appearance, sound, and meaning, the greater the likelihood of confusion. *Brookfield Communs.*, 174 F.3d at 1054. In applying this "sight, sound, and meaning" test, the Court considers the marks "in their entirety and as they appear in the marketplace, with similarities weighed more heavily than differences." *Id.*

CrossBow and BowFlex *look and sound* somewhat similar, to the extent that both words include "bow." However, marks must be considered as a whole, and should not generally be dissected or considered piece-meal. *Franklin Mint Corp. v. Master Mfg. Co.*, 667 F.2d 1005, 1007 (Cust. & Pat.App.1981). Here, the "bows" are in different places in the marks, the back and the front respectively. Moreover, "CrossBow" often is printed in a stylized font with cross-hairs, like a gun sight, in the "o" of Cross. This is how the mark Cross-Bow appears on the actual machine. Bow-Flex, on the other hand, appears in simple capital letters in the material submitted to the Court.

The two words have different *meanings,* although they both bring to mind a form of "bow." "Crossbow" clearly means a type of weapon shooting a bolt. "Bowflex" has no independent meaning, unlike "crossbow," but does call to mind a bow bending. There are some similarities in the meanings, inspired by bow, but overall the two marks do not have the same look, sound, and meaning. While the marks are somewhat similar, the marks by themselves are not necessarily confusing.

It should be noted that Defendant ICON occasionally identifies its product as "CrossBow by Weider." Clearly this phrase looks, sounds, and means something different than BowFlex. However, the "CrossBow by Weider" phrase is not used consistently. Often the product is only described as the CrossBow, according to the advertising samples provided to the Court. The "TM" indicating trademark protection is often placed immediately after "CrossBow." Also, "by Weider" is often minimized by being printed in a small font, relative to "CrossBow." Therefore, analyzing the similarities between "Cross-Bow" and "BowFlex" is the most appropriate test.

Related to this analysis, CrossBow argues that "bow" is a "generic" term, so that the Court should only compare the "Cross" and "Flex" components of the respective marks. CrossBow contends that it is so obvious that "bow" must be used to describe the resilient rods of the exercise machines that no trademark protection can flow from the term. It is true that, under the functionality analysis, courts will ignore part of a trademark when it merely describes the product to which the trademark applies. *See, e.g., Keebler Co. v. Murray Bakery Prods.*, 866 F.2d 1386 (Fed.Cir.1989). For example, the trademark "Pecan Shortees," describing a type of pecan cookie, was not confusing with "Pecan Sandies," another pecan cookie, because the only strong similarity between the marks was caused by the word "pecan," a generic descriptive term that could not be trademarked. *Id.* at 1388. However, as described in more detail below, the Court concludes that "bow" is a creative way to describe the rods used in both exercise devices, not a generic term that is merely descriptive of the exercise machines. While the term "rod" might be a generic descriptor of the resilient rods used the exercise machines, "bow" is not. "Bow" is not a generic term such that the

Court should only look at the "Cross" and "Flex" components of the trademarks to determine similarity.

### 2. Relatedness or proximity of the two companies' products or services

There is no dispute that the parties effectively market the same product—a resilient rod home exercise machine. This factor is relevant to the confusion analysis in that for related goods, the danger presented is that the public will mistakenly assume there is an association between the producers of the related goods, though no such association exists. *Sleekcraft*, 599 F.2d at 350. The more likely the public is to make such an association, the less similarity in the marks is requisite to a finding of likelihood of confusion. *Id.* Here, because the products are very similar, Plaintiff can prevail on a lower showing of similarity between the marks.

### 3. Strength of the registered mark

The strength of a mark is determined by its placement on a continuum of increasing distinctiveness: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful. *Two Pesos. Inc. v. Taco Cabana. Inc.*, 505 U.S. 763, 768, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). Generic terms are those used by the public to refer generally to the product rather than a particular brand of the product. Descriptive terms directly describe the quality or features of the product. A suggestive mark conveys an impression of a good but requires the exercise of some imagination and perception to reach a conclusion as to the product's nature. Arbitrary and fanciful marks have no intrinsic connection to the product with which the mark is used; the former consists of words commonly used in the English language, whereas the latter are wholly made-up terms. Generic and descriptive marks are weak, while arbitrary

and fanciful marks are strong. Suggestive marks are presumptively weak, but may be strengthened through actions in the marketplace, such as extensive advertisement leading to wide recognition. *Brookfield Communs.*, 174 F.3d at 1058.

BowFlex is a suggestive mark. "Bow" suggests the resilient rods, and "Flex" suggests an exercise machine. "BowFlex" certainly does not "describe" the exercise machine like the term "Rod Exerciser" would. As a suggestive mark, BowFlex is presumptively weak. However, there can be no doubt that BowFlex has made a significant investment into advertising in various media such that the public in general associates resilient rod exercise machines with BowFlex. Plaintiff submits evidence from a 2000 study that finds that BowFlex is the eighth most recognized name brand in the exercise equipment industry. (Potter Decl. ¶ 11.) Plaintiff demonstrates that BowFlex has become a strong mark.

### 4. Marketing channels used

The use of convergent marketing channels increases the likelihood of confusion. *Sleekcraft*, 599 F.2d at 353. Defendant does not contest that it uses the same marketing channels as BowFlex. In fact, Plaintiff submits evidence that, during a stretch of several months, a CrossBow infomercial played within 30 minutes to 2 hours of *every* BowFlex infomercial. (Vroman Decl. ¶¶ 4–5.) This factor favors the Plaintiff.

Related to the issue of the marketing channels used, Defendant argues that its use of comparative advertising negates confusion. It is correct that Defendant cannot be guilty of trademark infringement merely because it compares the CrossBow with the BowFlex in its advertising. *Anti–Monopoly, Inc. v. General Mills Fun Group*, 611 F.2d 296, 301 n. 2 (9th Cir.1979) ("The owner of a widely recognized trademark cannot ... prevent a competitor from referring to the owner's mark in the context of comparative advertising."). The mere fact that Defendant uses comparative advertising, however, does not immunize it against claims of infringement. *See Lindy Pen Co. v. Bic Pen Corp.*, 725 F.2d 1240, 1248 (9th Cir. 1984), *cert. denied*, 469 U.S. 1188, 105 S.Ct. 955, 83 L.Ed.2d 962 (1985). If a party adopts a confusingly similar mark, comparative advertising will not cure the infringement.

### 5. Degree of care likely to be exercised by the purchaser in selecting goods

When goods are expensive, the buyer can be expected to exercise greater care in his or her purchases, thereby reducing the possibility of confusion. *Sleekcraft*, 599 F.2d at 353. Defendant introduces evidence from its expert, Dr. Kamins, that consumer decisions to buy exercise equipment are "high involvement." In other words, consumers do not buy immediately or on impulse, but look at cost, performance and their own personal goals before deciding which exercise machine to buy. (Kamins Decl. ¶¶ 10–12.) Plaintiff contends that exercise machines sold through direct sales, such as the BowFlex, are purchased on impulse, partially because there is no method available for the consumer to inspect the product. While consumers will not use as much care in buying an exercise machine as in buying a home, it seems reasonable based on Defendant's evidence to assume that the average consumers will take some care in choosing which machine to buy.

### 6. Accused infringers' intent in selecting its mark

If a party chooses a mark with the intention of creating confusion between its products and those of another company, that fact alone may be sufficient to justify an inference of confusing similarity. *E. &*

*J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1293 (9th Cir.1992); *Therma–Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 638 (6th Cir.2002). Circumstantial evidence of copying, particularly the use of a contested mark with knowledge of the protected mark at issue, is sufficient to support an inference of intentional infringement where direct evidence is not available. *Id.* at 638–39.

There is circumstantial evidence of copying in this case. There can be no dispute that CrossBow clearly knew of the Bow-Flex mark when it entered the market. The beginning "Bow" of BowFlex is very distinctive. By naming its product "Cross-Bow," Defendant invited comparison and reference to the BowFlex. While manufacturers of archery equipment may use "bow" to describe their products, there currently appears to be no other product in the exercise machine market using "bow" in its name, unlike the term "flex," which is common. Therefore, it is likely that Defendant chose to incorporate the term "bow" in an attempt to capture some of the market of the BowFlex. While CrossBow's intent may predominately have been to compete, in doing so it drew on Defendant's mark.

### 7. Evidence of actual confusion

Evidence that use of two marks has already led to confusion is persuasive proof that future confusion is likely. *Sleekcraft*, 599 F.2d at 352. Generally, actual confusion is the best evidence of likelihood of confusion. *Therma–Scan*, 295 F.3d at 639. Nonetheless, isolated instances of actual confusion after a significant period of time of concurrent sales or extensive advertising do not always indicate an increased likelihood of confusion and may even suggest the opposite. *Id.; cf. Champions Golf Club v. Champions Golf Club*, 78 F.3d 1111, 1120 (6th Cir.1996) (stating in dicta that "four incidents [of actual confusion] is not a considerable quantum of evidence of

actual confusion, and minimal or isolated instances of actual confusion are, obviously, less probative than a showing of substantial actual confusion").

Plaintiff submits transcripts of four telephone calls that it recorded with customers as evidence of confusion. While some of the calls are difficult to interpret, there can be no doubt that two of the customers were unclear on the fact that CrossBow and BowFlex are different machines and companies: "Are you connected with the CrossBow? ... Oh, I thought it was the same maker" (Call No. 23); "I have it [the BowFlex] on order at Sears." [No dispute that the CrossBow, not the BowFlex, is sold at Sears.] (Call No. 49).

Noting this evidence of actual conclusion, nonetheless Defendant is correct that it is difficult to determine where exactly this customer confusion originates. Since BowFlex has been the only resilient rod exercise machine on the market, it is possible that consumers would confuse *any* similar product, even if Defendant had named their product the "Rod Machine." Also, given the thousands of calls that BowFlex receives, it is difficult to gauge whether these calls were merely "isolated instances" of confusion or more representative of the average consumer. Regardless, the Court concludes that Plaintiff has produced evidence of confusion.

From the above analysis, the Court concludes that Plaintiff has demonstrated a likelihood of confusion between the BowFlex and the CrossBow and probable success on the merits. The marks are somewhat similar, and there is evidence of actual confusion. Moreover, BowFlex is a strong mark, and there is circumstantial evidence that CrossBow chose its name, incorporating "bow," to take advantage of BowFlex's strong mark. Although consumers may be likely to take some care in buying an exercise machine, the possibility of confusion is increased because of the

use of the same advertising channels and the similarity of the products. Analysis of the above factors favors BowFlex, and demonstrates Plaintiff's probable success on the merits.

### B. IRREPARABLE INJURY/BALANCE OF THE HARDSHIPS

■ Since irreparable injury may be presumed from a showing of likelihood of success on the merits of a trademark infringement claim, courts generally need go no further than the above likelihood of confusion analysis. *Metro Pub., Ltd. v. San Jose Mercury News*, 987 F.2d 637, 640 (9th Cir.1993) ("Once the plaintiff has demonstrated a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief is not granted."). Moreover, Plaintiff has demonstrated the possibility of irreparable injury. Plaintiff claims lost sales, delayed sales, forced priced concessions, and increased advertising and phone center costs. (Gatzlaff Decl. ¶ 4.) Plaintiff also argues loss of customer goodwill and a loss of control over its reputation and sales by being forced from direct sales into retail. Although Defendant makes much of Plaintiff's several months of delay in bringing this motion, Plaintiff's delay is not unusual or of import. The Court does not find relevant to the irreparable injury analysis Plaintiff's decision to initially pursue a patent preliminary injunction and, on failure, then a trademark injunction.

### C. MOTIONS TO STRIKE

#### 1. Plaintiff's motion to strike Declaration of Michael Kamins

■ Mr. Kamins is a marketing professor who offers expert testimony for Cross-Bow. Because Mr. Kamins assumes Defendant's trademark to be "CrossBow by Weider," his testimony is not helpful to the Court's analysis. Also, while he cites a study reporting that 14 out of 100 consumers are confused by print advertising, this statistic is of little probative value given that most BowFlex advertising is through informercials.

However, in his testimony on whether or not an exercise machine is a "high involvement" good—that is, one that a consumer thinks about before buying—Mr. Kamins cites several academic studies. He also reviewed recorded customer calls in forming his conclusion, so it cannot be labeled pure speculation. Accordingly, Plaintiff's motion to strike Mr. Kamins' declaration is GRANTED in part and DENIED in part.

#### 2. Plaintiff's motion to strike Declaration of Colleen Logan

■ Ms. Logan testifies to the amount that CrossBow has spent on advertising. Plaintiff argues that, since Defendant has failed to provide certain discovery responses on trademark claims and defenses, that the Court should exclude this testimony. Plaintiff's remedy for failure to provide discovery is move to compel, not exclude evidence at this stage in the litigation. Plaintiff's motion to strike Ms. Logan's declaration is DENIED.

#### 3. Defendant's motion to strike evidence submitted for the first time with the reply brief

■ Defendant correctly moves to strike a declaration with new evidence submitted in reply. *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir.1996), *cert. denied*, 522 U.S. 808, 118 S.Ct. 48, 139 L.Ed.2d 14 (1997). The declaration at issue contains new evidence on recorded phone conversations to which Defendant is not able to respond within the briefing schedule. The Court will not consider this evidence, and Defendant's motion to strike is GRANTED. (Dkt. No. 92.)

### CONCLUSION

Because Plaintiff has shown a probability of success on the merits and the possi-

bility of irreparable injury, Plaintiff's motion is GRANTED. Defendant ICON is therefore prohibited from using the Cross-Bow mark on exercise equipment until entry of final judgment in the present case. This order shall become effective when Nautilus posts an injunction bond in the amount of $100,000 and serves a copy of such bond on Defendant ICON.

The Clerk is directed to send copies of this order to all counsel of record.

## ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION

Defendant Icon Health and Fitness, Inc. ("Icon") moves for reconsideration of this Court's order granting Plaintiff's motion for a preliminary injunction and prohibiting Defendant from using the CrossBow mark on exercise equipment until entry of final judgment. (Dkt. No. 106.) In the alternative, Defendant moves to stay the Court's order pending appeal. Because Defendant does not raise new facts nor demonstrate manifest error in this Court's prior order, the motion for reconsideration is DENIED. Defendant also fails to demonstrate a probability of success or that the balance of hardships tips sharply in its favor. Therefore, Defendant's motion for a stay of the preliminary injunction is also DENIED.

### A. Reconsideration

Motions for reconsideration are disfavored. Local Rule CR 7(h)(1). The Court will ordinarily deny such motions in the absence of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to the Court's attention earlier with reasonable diligence. *Id.*

### 1. Similarity of the Marks

Defendant contends that the Court erred in finding BowFlex and CrossBow "somewhat similar" marks primarily because of the word "bow" used in both. However, there is no bright line rule, as Defendant suggests, that trademarks comprising two words or a compound word are not confusingly similar if they have in common one word which is suggestive of the nature of the goods to which the marks are applied. Rather, courts may or may not find such trademarks confusing depending on the extent to which the common word is dominant. *American Throwing Co. v. Famous Bathrobe Co.,* 45 C.C.P.A. 737, 250 F.2d 377, 382 (Cust. & Pat.App.1957) (distinguishing the case cited by Defendant, *Smith v. Tobacco By–Prods. & Chem. Corp.,* 44 C.C.P.A. 880, 243 F.2d 188 (Cust. & Pat. App.1957)). Although Defendant repeatedly emphasizes how critical the word "bow" is to its analysis and product, this Court found the marks only "somewhat similar" given the differences between CrossBow and BowFlex in meaning and look. The Court sees no error in its conclusion.

Defendant also argues that the Cross-Bow and BowFlex marks are dissimilar because "bow" is generic. Defendant repeats the argument it made on the preliminary injunction motion and that the Court rejected. The Court does not agree that "bow" has come to signify resilient rod exercise machines to the extent that no other commonly used alternative effectively conveys the same functional information. It does not take significant imagination to invent other possible names—rodflexer or rodbender, for example—that convey the image of resilient rods that bend on a cantilever. Rather, as noted in the Court's prior order, Defendant's use of the term "bow" is evidence of its intent to invite comparison and reference to the BowFlex to capture some of the market for the BowFlex.

Furthermore, Defendant maintains that the Court erred in not analyzing "Cross-Bow by Weider" as Defendant's mark,

rather than simply "CrossBow." This issue was considered by the Court and fully briefed and argued by the parties, with both the record and Plaintiff demonstrating that (1) "by Weider" is often omitted, (2) the "TM" of trademark is often placed immediately after CrossBow, and (3) "by Weider" is often minimized in a small font relative to CrossBow. *See AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341, 351–52 (9th Cir.1979) (taking into account similar issues of additional terms, positioning and font). It is simply not true that Defendant includes "by Weider" "in all of the labeling and advertising before the Court," as Defendant contends. Accordingly, the Court appropriately compared "BowFlex" with "CrossBow."

### 2. Intent

Defendant contends that the Court's finding of circumstantial evidence of copying was in error. However, Defendant does not dispute that it knew of the Bow-Flex mark when it entered the market and that it copied a portion of that distinctive mark. Defendant's apparently newly uncovered evidence that there exists another exercise device called "BodyBow" is of little relevance to this analysis, particularly when it is not clear that "BodyBow" is actually in the market and when Plaintiff indicates it is policing its mark.

Likewise, the Court considered and rejected Defendant's argument that Cross-Bow's comparative advertising prevents a likelihood of confusion. The Court concluded that CrossBow's comparative advertising did not cure the likelihood of confusion demonstrated by consideration of the *Sleekcraft* factors. Nor did comparative advertising demonstrate that Plaintiff did not intend to cause confusion with the choice of its mark.

### 3. Evidence of Actual Confusion

Defendant argues that the Court erred in finding that Plaintiff produced calls from consumers evidencing actual confusion as to the source or origin of the goods caused by the similarity of the marks. For at least two of the calls, there appeared to be clear confusion about the marks and the origin of the products. However, the Court did note that in all the instances of customer confusion, it was difficult to gauge whether the calls were representative and whether consumers might confuse any similar product given BowFlex's apparent dominance. Nonetheless, these caveats do not change the fact that Plaintiff produced evidence of actual confusion.

In deciding Plaintiff's motion for a preliminary injunction, the Court weighed the evidence, guided by the *Sleekcraft* factors, and came to the conclusion that Plaintiff demonstrated a likelihood of confusion between the BowFlex and CrossBow marks. Defendant does not point to any legal error or new facts that the Court believes changes its analysis. Therefore, Defendant's motion for reconsideration is DENIED.

### B. Stay Pending Appeal

In the alternative, Defendant requests that the Court stay the preliminary injunction pending an appeal. The standard for a stay pending appeal is effectively the same as that for issuing a preliminary injunction. *Lopez v. Heckler,* 713 F.2d 1432, 1435 (9th Cir.1983). Accordingly, the Court weighs the parties' likelihood of success on the merits, the possibility of irreparable injury, the relative hardship of the parties, and the public interest. *Id.; see also Standard Havens Prods. v. Gencor Indus.,* 897 F.2d 511, 512–13 (Fed.Cir. 1990).

The Court has already found that Plaintiff demonstrates a likelihood of success on the merits. While the Court is aware of

the hardship that the preliminary injunction will place on Defendant, Plaintiff has also demonstrated a possibility of irreparable harm. From the record before it, the Court cannot conclude that the balance of the hardships tips sharply in Defendant's favor. Clearly Plaintiff has a strong interest in ensuring that its trademark is not infringed, as does the public in general in protection of trademark. Defendant has not met the standard for a stay of the preliminary injunction. Accordingly, Defendant's motion in the alternative for a stay pending appeal is DENIED.

The Clerk is directed to send copies of this order to all counsel of record.