NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-1313

(Opposition Nos. 91/163,354; 91/166,973; and 91/166,975)

KELLY C. HAINLINE,

Appellant,

v.

VANITY FAIR, INC.,

Appellee.

Kelly C. Hainline, of Castle Rock, Colorado, pro se.

Paul J. Kennedy, Pepper Hamilton LLP, of Philadelphia, Pennsylvania, for appellee.

Appealed from: United States Patent and Trademark Office
Trademark Trial and Appeal Board

NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-1313
(Opposition Nos. 91/163,354; 91/166,973; and 91/166,975)

KELLY C. HAINLINE,

Appellant,

v.

VANITY FAIR, INC.,

Appellee.

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board.

_____

DECIDED:   December 5, 2008
_____

Before MAYER and DYK, <u>Circuit Judges</u> and HUFF, <u>District Judge</u>.*

PER CURIAM.

Kelly C. Hainline ("Hainline") appeals a decision of the Trademark Trial and Appeal Board sustaining the oppositions of Vanity Fair, Inc. ("Vanity Fair") to the registration of the marks VANITY N SANITY, VANITY & SANITY and VANITY

_____

    *    Honorable Marilyn L. Huff, United States District Court for the Southern District of California, sitting by designation.

INSANITY.  Vanity Fair, Inc. v. Hainline, Oppositions Nos. 91163354, 91166973, 91166975 (T.T.A.B. Jan. 15, 2008) (hereinafter "Board Decision").  We affirm.

I.

Vanity Fair is one of the nation's largest manufacturers of women's apparel and is the owner of several VANITY FAIR trademarks.  It has used its VANITY FAIR mark nationwide in connection with clothing since 1916.  In 2003, Hainline filed intent to use applications seeking to register the following marks: VANITY N SANITY, VANITY & SANITY and VANITY INSANITY.  Vanity Fair filed oppositions to each of the proposed registrations.  By an order dated April 27, 2006, the board consolidated the three opposition proceedings.

On January 15, 2008, the board sustained Vanity Fair's oppositions.  It concluded that the "VANITY FAIR mark is famous and entitled to a broad scope of protection."  Board Decision, slip op. at 15.  The board further determined that the "parties' goods, trade channels and classes of purchasers are legally identical" and that there was a likelihood of confusion between the competing marks.  Id.

Hainline timely appealed to this court.  We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(B).

II.

The board has authority to refuse to register a trademark that so resembles a registered mark "as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive."  15 U.S.C. § 1052(d).  Likelihood of confusion is a question of law, based upon underlying factual determinations.  In re Chatam Int'l, Inc., 380 F.3d 1340, 1342 (Fed. Cir. 2004); On-Line

Careline, Inc. v. Am. Online, Inc., 229 F.3d 1080, 1084 (Fed. Cir. 2000). This court reviews the board's factual findings for substantial evidence. Hewlett-Packard Co. v. Packard Press, Inc., 281 F.3d 1261, 1265 (Fed. Cir. 2002).

In re E.I. DuPont DeNemours & Co. sets out numerous factors that are relevant in determining whether there is a likelihood of confusion between competing marks:

> In testing for likelihood of confusion . . . the following, when of record, must be considered: (1) The similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression. (2) The similarity or dissimilarity and nature of the goods or services as described in an application or registration or in connection with which a prior mark is in use. (3) The similarity or dissimilarity of established, likely-to-continue trade channels. (4) The conditions under which and buyers to whom sales are made, i.e. 'impulse' vs. careful, sophisticated purchasing. (5) The fame of the prior mark (sales, advertising, length of use). (6) The number and nature of similar marks in use on similar goods. (7) The nature and extent of any actual confusion. (8) The length of time during and conditions under which there has been concurrent use without evidence of actual confusion. (9) The variety of goods on which a mark is or is not used (house mark, 'family' mark, product mark). (10) The market interface between applicant and the owner of a prior mark. . . . (11) The extent to which applicant has a right to exclude others from use of its mark on its goods. (12) The extent of potential confusion, i.e., whether de minimis or substantial. (13) Any other established fact probative of the effect of use.

476 F.2d 1357, 1361 (C.C.P.A. 1973).

Although the likelihood of confusion analysis considers all of the relevant DuPont factors, it "'may focus . . . on dispositive factors, such as similarity of the marks and relatedness of the goods.'" Hewlett Packard, 281 F.3d at 1265 (quoting Han Beauty, Inc. v. Alberto-Culver Co., 236 F.3d 1333, 1336 (Fed. Cir. 2001)). In the present case, the board correctly concluded that several DuPont factors weigh strongly in favor of a likelihood of confusion between the VANITY FAIR mark and Hainline's proposed marks. These factors include: (1) the fame of the VANITY FAIR mark, (2) the similarity of the

goods, (3) the similarity of the trade channels, and (4) the similarity of the competing marks.

Fame of a prior mark can play a "dominant" role in the process of balancing the DuPont factors. Recot, Inc. v. Becton, 214 F.3d 1322, 1327 (Fed. Cir. 2000). "A famous mark is one 'with extensive public recognition and renown.'" Bose Corp. v. QSC Audio Prods., Inc., 293 F.3d 1367, 1371 (Fed. Cir. 2002) (quoting Kenner Parker Toys, Inc. v. Rose Art Indus., Inc., 963 F.2d 350, 353 (Fed. Cir. 1992)). The VANITY FAIR mark has been in use nationwide since 1916. Sales of Vanity Fair clothing in the United States have been very substantial and significant sums have been expended to advertise the company's apparel.[**] Furthermore, Vanity Fair clothing has received extensive unsolicited coverage in national magazines and other media. See id. (noting that "the fame of a mark may be measured indirectly . . . by the volume of sales and advertising expenditures of the goods traveling under the mark."). "[F]amous marks are more likely to be remembered and associated in the public mind than a weaker mark." Id. Thus, the fact that Vanity Fair products have achieved significant fame weighs strongly in favor of a conclusion of likely confusion. See Recot, 214 F.3d at 1327 ("Famous marks . . . enjoy a wide latitude of legal protection."); Kenner Parker Toys, 963 F.2d at 354 ("In consonance with the purposes and origins of trademark protection, the Lanham Act provides a broader range of protection as a mark's fame grows.").

---

[**] Sales and advertising figures for Vanity Fair products have been provided to this court in a confidential brief.

Another important factor weighing heavily in favor of a likelihood of confusion is the similarity or "relatedness" of the goods. Recot, 214 F.3d 1327-30; DuPont, 476 F.2d at 1361. Where "goods are related, 'the degree of similarity necessary to support a conclusion of likely confusion declines.'" Shen Mfg. Co. v. Ritz Hotel, Ltd., 393 F.3d 1238, 1242 (Fed. Cir. 2004) (quoting Century 21 Real Estate Corp. v. Century Life of Am., 970 F.2d 874, 877 (Fed. Cir. 1992)). Here, the goods identified in Vanity Fair's registration include lingerie, loungewear, sleepwear and underwear. These same items are also included in Hainline's applications. Because of the striking similarity of the goods sold, it is much more likely that consumers will be confused by the competing marks. See Chatam, 380 F.3d at 1344 (Likelihood of confusion exists where both parties sell alcoholic beverages.); Hewlett-Packard Co., 281 F.3d at 1268 (Likelihood of confusion exists where both parties provide computer-related products.).

Likewise, the fact that the goods are likely to travel in similar trade channels increases the likelihood of confusion. See In re Majestic Distilling Co., 315 F.3d 1311, 1316 (Fed. Cir. 2003) (Likelihood of confusion established where competing products were "marketed in many of the same channels of trade to many of the same consumers."). As the board correctly noted, "[t]o the extent that [Hainline's] goods are legally identical to [Vanity Fair's] goods . . . the trade channels and classes of purchasers for the respective goods likewise must be deemed to be identical." Board Decision, slip op. at 10; see Hewlett-Packard, 281 F.3d at 1268 ("[A]bsent restrictions in the application and registration, goods and services are presumed to travel in the same channels of trade to the same class of purchasers.").

Another significant factor weighing in favor of a likelihood of confusion is the similarity of the marks. When evaluating marks, the board must compare "the two marks in their entireties and [give] each individual term in the respective marks more or less weight depending on its effect on the overall commercial impression." Chatam, 380 F.3d at 1345. Analysis of the marks must include consideration of similarities in appearance, sound, and connotation. Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin, 396 F.3d 1369, 1371 (Fed. Cir. 2005).

As the board correctly concluded, "[i]n terms of overall commercial impression, . . . the marks are similar due to the fact that they all begin with the word VANITY." Board Decision, slip op. at 14. Purchasers who are familiar with Vanity Fair products are likely, when encountering similar products bearing a mark beginning with the word "vanity," to be confused as to whether such products are manufactured or distributed by Vanity Fair. See Hewlett-Packard Co., 281 F.3d at 1266-68 (Confusion between products bearing the mark PACKARD TECHNOLOGIES and products bearing the mark HEWLETT-PACKARD is likely because the marks share the common word "Packard" and the goods and services of the parties are related).

Hainline argues that there are significant differences between her marks and the VANITY FAIR mark. She contends that her marks "have more visual presence and persistence" and are "more visually cutting edge and progressive" than the VANITY FAIR mark. Even accepting this as true, however, substantial evidence supports the board's determination that "the dominant feature in the commercial impressions created by [Hainline's] marks and [Vanity Fair's] mark is the word VANITY." Board Decision, slip op. at 12. "Vanity" appears as the first word in each of the marks, and is therefore

more likely to be perceived by purchasers as indicating the source of the goods. See Palm Bay Imps., 396 F.3d at 1372 (VEUVE held to be the prominent feature in a mark where the term appeared as the first word in two different champagnes); Century 21, 970 F.2d at 876 (finding CENTURY 21 and CENTURY OF LIFE OF AMERICA confusingly similar); Morton-Norwich Prods., Inc. v. S.C. Johnson & Son, Inc., 531 F.2d 561, 562 (C.C.P.A. 1976) (concluding that RAINFRESH is confusingly similar to RAIN BARREL given the "similarity of commercial impressions"). Furthermore, because the word "vanity" is distinctive or arbitrary, as applied to clothing, it is "conceptually strong as a trademark." Palm Bay Imps., 396 F.3d at 1372; see Nautilus Group, Inc. v. Icon Health & Fitness, Inc., 372 F.3d 1330, 1340 (Fed. Cir. 2004) (defining an "arbitrary mark" as "a known word used in an unexpected or uncommon way" and noting that such marks are usually strong).

Hainline also challenges the board's determination that the VANITY FAIR mark is famous and thus entitled to a broad scope of protection. She asserts that Vanity Fair has failed to provide "direct evidence that consumers view 'Vanity Fair' as a distinctive source indicator" and that it has failed to provide "any direct evidence of 'market share', recognition surveys, or consumer recognition of the fame of the marks." As this court has previously made clear, however, there is no obligation to demonstrate the fame of a mark by direct evidence. Bose, 293 F.3d at 1371. "Direct evidence of fame, for example from widespread consumer polls, rarely appears in contests over likelihood of confusion. Instead, our cases teach that the fame of a mark may be measured indirectly, among other things, by the volume of sales and advertising expenditures of the goods traveling under the mark, and by the length of time those indicia of

commercial awareness have been evident." Id. As noted above, Vanity Fair submitted persuasive evidence demonstrating its high volume of sales and significant advertising expenditures.

Hainline also contends that the board "erred in not taking into consideration the third party registrations of the mark 'Vanity Fair.'" We disagree. The board did, in fact, consider the fact that there had been third party VANITY FAIR registrations, but noted that these registrations did not cover clothing. See Board Decision, slip op. at 8. Furthermore, while Hainline submitted a table of third party registered marks, she did not establish that these marks were in use. "[T]he probative value of third-party trademarks depends entirely upon their usage." Palm Bay Imps., 396 F.3d at 1373; see Han Beauty, 236 F.3d at 1338 (Evidence of third party registration of a mark, without evidence of use of that mark, has only "minimal" probative value.).

We have considered Hainline's remaining arguments but find them unpersuasive. We therefore affirm the board decision sustaining Vanity Fair's oppositions to the registration of Hainline's marks.